# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3905 | **DATE** | 4/6/2004 |
| **CASE TITLE** | Darryl W. Kinney vs. Hamilton Partners | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____ .

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .

(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7) ☐ Trial[set for/re-set for] on _____ at _____ .

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (38) is granted. Plaintiff's State Law breach of severance agreement claim is dismissed without prejudice. Enter memorandum and order. Case Terminated.

(11) ■ [For further details see memorandum and order which is attached to the minute order.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | |
| ☐ No notices required. | |
| ☐ Notices mailed by judge's staff. | |
| ☐ Notified counsel by telephone. | |
| ✓ Docketing to mail notices. | |
| ✓ Mail AO 450 form. | |
| ☐ Copy to judge/magistrate judge. | |

number of notices

date docketed    APR 0 7 2004

docketing deputy initials

date mailed notice    APR 0 7 2004

mailing deputy initials

Document Number

51

SLB    courtroom deputy's initials

U.S. DISTRICT COURT
2004 APR -6 PM 3:00

Date/time received in central Clerk's Office

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DARRYL W. KINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 03 C 3905 |
| | ) | |
| v. | ) | George W. Lindberg |
| | ) | Senior United States District Judge |
| HAMILTON PARTNERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On June 9, 2003, Plaintiff Darryl W. Kinney filed his Complaint of Employment Discrimination against Defendant Hamilton Partners. Plaintiff's complaint states three claims[1] – (1) race discrimination in violation of Title VII, (2) retaliation in violation of Title VII, and (3) breach of Plaintiff's severance agreement in violation of state law – and asks the Court, *inter alia*, to grant Plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs.

On February 13, 2004, Defendant filed its motion for summary judgment. Defendant's motion is hereby granted.

APR 0 7 2004

### *Legal Standards – Summary Judgment*

Summary judgment will be granted only "when the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003) (quoting Fed. R. Civ. P. 56).

---

[1] *See Kinney v. Hamilton Partners*, No. 03-3905 (N.D. Ill. Aug. 6, 2003) (order denying Defendant's motion to dismiss).

In making this determination, the Court must "constru[e] all facts . . . and draw[] all reasonable inferences from those facts . . . in favor of the . . . non-moving part[y] . . . ." *Id.* (citation omitted).

Because Plaintiff is proceeding *pro se* in this civil action, he "benefit[s] from various procedural protections not otherwise afforded to the attorney-represented litigant . . . ."[2] *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) (citation and internal quotation marks omitted). However, Plaintiff must still adhere to the Federal Rules of Civil Procedure and this District's local rules.[3] *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) ("rules apply to uncounseled litigants and must be enforced"). This includes compliance with rules governing summary judgment motions.[4] *Little v. Cox's Supermkts.*, 71 F.3d 637, 641 (7th Cir. 1995) (district court may strictly enforce Northern District of Illinois Local Rule 56.1); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir. 1994) (same).

### Statement of Facts

On February 5, 2004, the Court ordered Plaintiff to file his response to Defendant's

---

[2]*See also Greer v. Bd. of Educ. of the City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) ("'The essence of liberal construction is to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable.'") (citation omitted); *Tressel v. Combined Ins. Co. of Am.*, No. 01-6231, 2003 WL 1626528, at *4 (N.D. Ill. Mar. 27, 2003) ("*pro se* litigants are granted more leniency than a party who is represented by [counsel]") (citation omitted); *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) ("the Court reads a *pro se* plaintiff's pleadings liberally") (citation omitted).

[3]*See also Downs*, 78 F.3d at 1257 ("*pro se* litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines") (citation and internal quotation marks omitted).

[4]*See also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("district courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them") (citations omitted); *Tressel*, No. 01-6231, 2003 WL 1626528, at *4 ("the *pro se* litigant is still required to follow the rules of procedure and LR 56.1") (citation omitted).

summary judgment motion on or before February 27, 2004. *See Kinney v. Hamilton Partners*, No. 03-3905 (N.D. Ill. Feb. 5, 2004) (order establishing briefing schedule for Defendant's summary judgment motion). This included Plaintiff's response to Defendant's Local Rule 56.1(a)(3) Statement of Material Facts to Which There is No Genuine Issue.[5] *See* N.D. Ill. L.R. 56.1(b). Nevertheless, Plaintiff failed to file his response to Defendant's statement of material facts until March 8, 2004, ten days after the date set by the Court. To place Plaintiff's tardiness in perspective, Defendant timely filed its reply brief five days before Plaintiff filed his response to Defendant's statement of material facts.[6]

While Plaintiff may be entitled to leniency and greater procedural protections than Defendant (an attorney-represented litigant), he is not "entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Downs*, 78 F.3d at 1257 (citation and internal quotation marks omitted); *see also Members*, 140 F.3d at 702 (same). Additionally, Plaintiff must comply with this Court's local rules concerning summary judgment motions, including Northern District of Illinois Local Rule 56.1. *See Little*, 71 F.3d at 641; *Waldridge*, 24 F.3d at 923-24; *Tressel v. Combined Ins. Co. of Am.*, No. 01-6231, 2003 WL 1626528, at *4 (N.D. Ill. Mar. 27, 2003). Because Plaintiff's response to Defendant's statement of material facts was not filed in a timely

---

[5]Plaintiff was well aware of his obligations under Northern District of Illinois Local Rule 56.1. *See, e.g., Kinney v. Hamilton Partners*, No. 03-3905 (N.D. Ill. Jan. 16, 2004) (order striking Plaintiff's summary judgment motions and advising Plaintiff of requirements of N.D. Ill. L.R. 56.1); (Def.'s Notice to *Pro Se* Litigant Opposing Mot. for Summ. J.).

[6]Plaintiff has never offered any excuse or justification for his failure to comply with the Court's February 5 Order.

fashion, the Court will disregard the statements included therein.[7]

Even if the Court were to consider Plaintiff's untimely response to Defendant's statement of material facts, it would not serve to create a genuine issue as to any material fact. As an initial matter, the statements included in paragraphs 1-7, 9-14, 16-20, 23-30, 32, 34, 37-46, and 49 were not accompanied by a citation to the record or any other supporting material. Therefore, these statements may be disregarded when deciding Defendant's motion. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material") (citation omitted); *Little*, 71 F.3d at 641 ("Local Rule 56.1 makes explicit the responding party's burden of controverting the movant's position with adequate citations to the record . . . . General principles of advocacy suggest . . . that a party contesting summary judgment has a responsibility . . . to 'highlight which factual averments are in conflict as well as what record evidence there is to confirm the dispute.'") (citation omitted); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) ("It bears repeating that the purpose of summary judgment is to determine whether there is any genuine issue of material fact in dispute and, if not, to render judgment in accordance with the law as applied to the established facts. The facts must be established through one of the vehicles designed to ensure reliability and veracity – depositions, answers to interrogatories, admissions and affidavits.); N.D. Ill. L.R. 56.1(b)[8].

---

[7]On March 17, 2004, Plaintiff filed "Plaintiffs Reply to Defendants Reply to Plaintiffs Response to Defendants Local Rule 56.1(a)(3) Statement of Facts to Which There is No Genuine Issue." Plaintiff is not authorized under Northern District of Illinois Local Rule 56.1 to file such a reply, and at no time did he obtain leave from the Court to do so. Because Plaintiff's March 17 filing is inappropriate and plagued by the same procedural defects as his untimely March 8 response to Defendant's statement of material facts, it will be disregarded.

[8]Northern District of Illinois Local Rule 56.1(b) provides, in part:

Furthermore, the exhibits and documents cited to support the statements included in paragraphs 8, 15, 21-22, 31, 33, 35-36, and 47-48 were not properly (1) incorporated by Plaintiff's response[9] or (2) authenticated, certified, or otherwise made admissible or usable at trial. *Cf. Lamz*, 321 F.3d at 682-83 (finding that party "failed in his obligation to support controverted or additional facts with citations to admissible evidence" even though he "sought to support his factual disagreements by affixing to his brief assorted material . . . [without] ensur[ing] that he attached only admissible evidence"). "To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Scott v. Edinburg*, 346 F.3d 752, 759-60 n.7 (7th Cir. 2003) (citation omitted). Accordingly, the Court will not consider Exhibits A, B, C, E, F, G, H, I, or N or the statements purportedly derived from those exhibits. *See Woods v. City of Chicago*, 234

---

Each party opposing a motion filed pursuant to Fed. R. Civ. P. 56 shall serve and file . . . a concise response to the movant's statement that shall contain: (A) a response to each numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon,* and (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, *including references to the affidavits, parts of the record, and other supporting material relied upon.* All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

N.D. Ill. L.R. 56.1(b) (emphasis added).

[9]Plaintiff's Exhibits A, B, C, E, F, G, H, and I were submitted with Plaintiff's summary judgment motion. While many of those exhibits were cited in Plaintiff's response to Defendant's statement of material facts, they were not submitted with the same. Nevertheless, this fact is of little consequence in light of the other procedural defects that plague Plaintiff's filings.

F.3d 979, 988 (7th Cir. 2000) ("Sworn testimony is not the only basis on which summary judgment may be granted; rather, 'the court may consider any material that would be admissible or usable at trial,' . . . including properly authenticated and admissible documents or exhibits.") (citations and internal quotation marks omitted); *Smith v. City of Chicago,* 242 F.3d 737, 741 (7th Cir. 2001) (same); *Martz,* 757 F.2d at 138. Indeed, it is well-established that "[s]upporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity – depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.'" *Friedel v. City of Madison,* 832 F.2d 965, 970 (7th Cir. 1987) (citations omitted).

Finally, Plaintiff's response to Defendant's statement of material facts does not incorporate or specifically cite to the deposition transcripts marked as Exhibits J, K, L, and M and attached to Plaintiff's brief in response to Defendant's summary judgment motion. Moreover, no citations to any of the transcripts may be found in Plaintiff's brief. These procedural errors doom Plaintiff's attempt to utilize the information contained therein. Indeed, the Court is under no duty to comb through the record, searching for evidence that could possibly support Plaintiff's claims. *See Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 898 (7th Cir. 2003) ("district courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them") (citations omitted); *Lamz,* 321 F.3d at 683 ("A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'") (citation omitted); *Little,* 71 F.3d at 641 ("It is reasonable to assume that just as a district court is not required to 'scour the record looking for factual disputes,' . . . it is not required to scour

the party's various submissions to piece together appropriate arguments.") (citation omitted); *Waldridge*, 24 F.3d at 923-24 (district court may strictly enforce Northern District of Illinois Local Rule 56.1). Because Plaintiff has failed to comply with Northern District of Illinois Local Rule 56.1 with respect to Exhibits J, K, L, and M, the Court will disregard those exhibits insofar as they are referenced by Plaintiff in response to Defendant's motion.

Because no properly supported facts or admissible evidence exist to controvert Defendant's statement of material facts, all properly supported statements included therein are deemed admitted. *See Lamz*, 321 F.3d at 683 ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission.") (citation omitted); N.D. Ill. L.R. 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

Defendant develops, owns, and manages commercial properties in and around Chicago, Illinois. Plaintiff was hired by Defendant as a building engineer in June 2002. Upon his hiring, Plaintiff was assigned to a group of buildings, including a facility located at 3 Hawthorne in Vernon Hills, Illinois. Initially, Plaintiff reported to Lead Engineer Jerry McGuire.[10] After McGuire resigned in the Fall of 2002, Plaintiff reported to Defendant's newly hired Lead Engineer, Don Jordan.

Plaintiff's formal education consists of a GED. Plaintiff has over fifteen years of experience working in the areas of heating, air conditioning, and refrigeration and holds a refrigeration certification from RSES, a refrigeration/engineering society. Prior to accepting a

---

[10]McGuire reported to Jim Kelly, Area Engineer. Kelly reported to Defendant's North Region Head Engineer, Ray Facteau. Facteau reported to Defendant's Senior Asset Manager, Rick Staback.

position with Defendant, Plaintiff (1) worked for Kraft Foods as a building engineer, (2) performed building maintenance for Motorola for three and a half years,[11] and (3) completed various heating and air conditioning projects for Heat It/Cool It from 1989 to 1994.

During the first week of October 2002, Plaintiff complained to Olivia Stuart, Human Resources Representative for Brunswick Corporation (a tenant of one of the buildings managed by Defendant) that a Brunswick employee, Jim Nelson, had made inappropriate comments to Plaintiff, including comments about Plaintiff allegedly "being gay." As a result of Plaintiff's complaint, Brunswick disciplined Nelson. Additionally, Defendant independently interviewed witnesses concerning Plaintiff's complaint.

On January 9, 2003, Plaintiff received a written warning from Jim Kelly, Area Engineer, following a dispute between Plaintiff and his direct supervisor, Jordan.[12] Shortly thereafter, Kelly met with Plaintiff and Jordan on January 17, 2003 to address the dispute. Kelly prepared written summaries of Plaintiff's and Jordan's statements.[13] The dispute between Plaintiff and Jordan concerned Jordan's request that Plaintiff provide him with one of Defendant's log books. Jordan allegedly informed Plaintiff that if Plaintiff refused to comply with Jordan's request, Jordan would call the police. According to Jordan, Plaintiff refused to provide Jordan with the requested log book and said "fuck you" to Jordan. Plaintiff does not dispute saying "fuck you" to Jordan.

---

[11]Plaintiff filed a race discrimination charge with the Equal Employment Opportunity Commission against Motorola. After settling with Motorola, Plaintiff executed a withdrawal of his EEOC charge.

[12]Jordan did not work for Defendant prior to the date that Plaintiff complained about Nelson to Brunswick.

[13]Plaintiff has admitted that the statement he provided to Kelly is true and accurate.

On January 27, 2003, Kelly provided Plaintiff with a memorandum that directed Plaintiff to improve his performance within forty-five days, or face termination. Plaintiff received a copy of the memorandum, but refused to sign the document because he did not believe that Kelly's warning was justified.

Plaintiff left work early on January 29, 2003, taking a partial sick day. Plaintiff also called Kelly on January 29, 2003 to let him know that Plaintiff would be taking sick days on January 30, 2003 and January 31, 2003, and that he would return to work on February 3, 2003 with a note from his doctor. Nevertheless, Plaintiff arrived at work on January 31, 2003 to pick up his paycheck. That same day, Plaintiff's cell phone was found in the parking lot of a building managed by Defendant.

Plaintiff did not report to work on February 3, 2003 or notify Defendant of his absence. Kelly made several attempts to page Plaintiff, but did not receive an answer. Kelly informed Senior Asset Manager Rick Staback of Plaintiff's absence and the discovery of Plaintiff's cell phone. Staback prepared a letter to Plaintiff advising him that Defendant was presuming that Plaintiff had terminated his employment with Defendant. Plaintiff acknowledges receiving Staback's letter.

On some date prior to February 5, 2003, Staback received an EEOC charge filed by Plaintiff against Defendant. After receiving the charge, Staback met with Plaintiff on February 5, 2003 and February 6, 2003 at Defendant's offices.[14] During the February 5 and February 6 meetings, Staback informed Plaintiff that "because of ongoing problems . . . things were not working out" and

---

[14]Plaintiff is seventy-two inches tall and weighs 275 pounds, and admittedly was not intimidated by Staback who is seventy-three inches tall and weighs 175 pounds.

suggested that Plaintiff accept a "severance arrangement" from Defendant. Staback initially offered Plaintiff thirty days of severance pay which Plaintiff rejected as insufficient. Over the course of the parties' February 5 and February 6 meetings, Defendant increased its settlement offer from thirty days of severance pay to three months of severance pay, or $12,500.04. In fact, Plaintiff originally agreed to accept two months of severance pay to avoid Defendant challenging Plaintiff's unemployment claim, but negotiated an additional month after consulting with a lawyer.[15] Defendant also agreed to accommodate Plaintiff's request that he be given a lump sum cash payment instead of being paid in increments over the three-month severance period.

On February 6, 2003, both Plaintiff and Staback signed the parties' severance agreement. The two-page agreement provided that Plaintiff would receive three months of his salary in one lump sum, less applicable deductions, and voluntarily withdraw his EEOC charge. It also provided that Plaintiff would have twenty-one days to decide whether to sign the agreement and an additional seven days to revoke the agreement. The severance agreement further advised Plaintiff to consult a lawyer prior to signing the same. Staback offered Plaintiff a copy of the severance agreement, but Plaintiff declined to take a copy.

Plaintiff returned to Defendant's offices on February 14, 2003 (after the seven-day revocation period had expired) to collect his severance check.[16] Plaintiff received his severance check on that date and endorsed the same. Honoring his contractual obligation to withdraw his EEOC charge against Defendant, Plaintiff also executed an EEOC Withdrawal Form on February

---

[15]Plaintiff contacted a lawyer, Ross Peters, on February 5, 2003 to obtain information and advice about his rights because he believed that he was wrongfully discharged. Plaintiff and Peters also discussed the issue of severance pay.

[16]Plaintiff also spoke to Peters on February 14, 2003.

10

14, 2003. In doing so, Plaintiff understood that the EEOC would withdraw his charge of discrimination. In fact, Plaintiff notified Defendant's counsel on March 4, 2003 that his EEOC charge against Defendant had been withdrawn at Plaintiff's request.

Although Defendant expressly agreed that it would not contest any unemployment claim filed by Plaintiff on or after April 1, 2003, Plaintiff filed an unemployment claim in February 2003. Notwithstanding the terms of the severance agreement, Plaintiff also refiled a substantially similar charge of discrimination and retaliation against Defendant with the EEOC on July 8, 2003. Plaintiff claims that he refiled his EEOC charge because he believes Defendant violated the law by "forcing [him] to sign something by using unemployment as a pawn."[17]

*Analysis*

Prior to examining the factual and legal bases for Plaintiff's Title VII claims, the Court must first determine whether those claims were waived by Plaintiff when he signed the February 6 severance agreement. Defendant argues that by signing the February 6 severance agreement, Plaintiff knowingly and voluntarily released and waived the Title VII claims that he is presently asserting against Defendant. This Court agrees.

**I.     Title VII – Race Discrimination and Retaliation**

It is well-established that "a plaintiff may waive a claim under Title VII . . . as part

---

[17]Plaintiff now denies having read the parties' February 6 severance agreement, and claims that he instead "went by the words that [Staback] said" and signed the document so that he could be released to file his unemployment claim which was the "only concern that [Plaintiff] had . . . ." Nevertheless, Plaintiff has not returned or reimbursed Defendant the $12,500.04 severance payment provided to Plaintiff on February 14, 2003.

of a voluntary settlement, provided that her consent to the release was voluntary and knowing."[18] *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 532 (7th Cir. 1996) (citation omitted); *see also Riley v. Am. Family Mut. Ins. Co.*, 881 F.2d 368, 371 (7th Cir. 1989) (same). When determining whether a plaintiff's release of her Title VII claims was "knowing and voluntary," the Court "must examine the 'totality of circumstances' surrounding the execution of the release." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 571 (7th Cir. 1995) ("*Pierce I*"). In doing so, the Court looks

> to a number of factors . . . including, but not limited to: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

*Pierce I*, 65 F.3d at 571 (citations omitted); *see also Nobles v. Discover Fin. Servs., Inc.*, No. 02-2446, 2003 WL 22326584, at *3 (N.D. Ill. Oct. 9, 2003) (same).

Initially, Plaintiff "must come forward with specific evidence sufficient to raise a question as to the validity of the release under the totality approach . . . .'" *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997) ("*Pierce II*"). Indeed, "[a] bald assertion of misrepresentation by the employer, standing alone, is legally insufficient.'" *Id.* (citation omitted). As discussed above, Plaintiff has failed to offer any admissible evidence that suggests Plaintiff did not knowingly and voluntarily release and waive his Title VII claims. This alone would justify a

---

[18]Underlying this rule is an "important federal policy: the encouragement of voluntary settlement of claims." *Pierce v. Atchison, Topeka & Santa Fe Ry. Co.*, 65 F.3d 562, 572 (7th Cir. 1995) ("*Pierce I*").

finding that the February 6 severance agreement constituted a valid and enforceable waiver of Plaintiff's Title VII race discrimination and retaliation claims.

Even if the Court were to continue its analysis and presume that Plaintiff had met his burden of production, the result would not change. While it is true that "the party seeking to enforce a waiver of . . . rights . . . bear[s] the burden of proving knowing and voluntary consent[,]" the Court is convinced that Defendant would be able to satisfy its burden. *See Pierce II*, 110 F.3d at 438.

## A.     Representation by and/or Consultation with Counsel

Discussion begins here because "a plaintiff who executes a release pursuant to the advice of independent counsel, or a party whose attorney actively negotiates the release, is presumed to have executed the document knowingly and voluntarily absent claims of fraud or duress." *Pierce I*, 65 F.3d at 571 n.1 (citation omitted); *see also Riley*, 881 F.2d at 372 ("This Court has similarly refused to allow a plaintiff to escape the consequences of a Title VII settlement entered into under the advice of the plaintiff's chosen counsel, although the Court was careful to note that competency of counsel is not an appropriate inquiry to consider in evaluating whether a settlement is knowingly reached."); *Donelson v. City of Chicago*, 272 F. Supp. 2d 717, 728 (N.D. Ill. 2003) ("Where the plaintiff, with the advice of independent counsel, executes an unambiguously-worded release of Title VII rights, the settlement is deemed voluntary and knowing – and hence, binding.") (citations omitted). Here, the February 6 severance agreement expressly advised Plaintiff "to consult with an attorney before signing [the same]." The facts indicate that Plaintiff heeded that advice. Indeed, Plaintiff spoke with an attorney, Ross Peters, about the termination of his employment on two occasions. Initially, Plaintiff spoke with Peters on February 5, 2003 to discuss his legal rights with respect to the termination of his employment and the issue of severance pay. That conversation took

place after Plaintiff received Defendant's initial settlement offer from Staback. Plaintiff also spoke with Peters on February 14, 2003 to inform Peters that he had negotiated and signed a severance agreement with Defendant, received his severance pay, and would no longer need Peters's services. These facts establish that Plaintiff had access to and consulted with an attorney throughout the negotiation and signing of the severance agreement (in addition to the revocation period following the signing of the same). Accordingly, this Court will presume that Plaintiff knowingly and voluntarily released and waived his Title VII claims. In light of the fact that Plaintiff has failed to present any admissible evidence to overcome this presumption, the Court is justified in concluding that Plaintiff's release and waiver are valid and enforceable.

### B.    Education and Business Experience

Plaintiff received the equivalent of a high school education, as evidenced by his GED. He also has over fifteen years of experience working in the heating, air conditioning, and refrigeration fields and holds a refrigeration certificate from a refrigeration/engineering society. With no admissible evidence to the contrary, the Court finds that Plaintiff's educational and professional experience favors Defendant.[19] Indeed, at least one court in this District has stated that "[a] high school education is usually deemed sufficient to weigh the . . . factor in the defendant's favor." *Nobles*, No. 02-2446, 2003 WL 22326584, at *3 ("Work experience . . . bolster[s] this determination.") (citations omitted).

### C.    Input in Negotiating Terms of Severance Agreement

The *Nobles* court also found that "[t]he second factor . . . can indicate knowledge and

---

[19]The fact that Plaintiff filed an EEOC charge against Motorola also favors Defendant because it establishes that Plaintiff had experience with filing an EEOC discrimination charge against an employer and settling/withdrawing the same.

voluntariness when employees actively negotiate portions of the severance package." *Id.* (citation omitted). Here, Plaintiff actively negotiated the severance agreement with Defendant. In fact, Plaintiff participated in two days of meetings during which he negotiated (1) an additional two months of severance pay, (2) the distribution of his severance pay in one lump sum, and (3) an agreement that Defendant would not contest any unemployment claim filed by Plaintiff on or after April 1, 2003.[20] These examples of active negotiation with respect to the severance agreement (and accompanying release and waiver of claims) strongly favor Defendant.

### D.    Clarity of Severance Agreement

The February 6 Severance Agreement consists of only two pages and explicitly provides:

> If you sign this letter which releases any and all claims that you have or may have against Hamilton, . . . we offer the following severance package:
>
> 1.    Three (3) months salary in one lump sum, less applicable deductions, payable to you on the eighth day after you sign this Agreement.
> 2.    One vacation day. . . .
> 4.    We will provide neutral references for you.
> 5.    We will not contest your unemployment claim filed on April 1, 2003 after the three months severance payment has elapsed.
>
> In exchange for the consideration provided above, you agree to the following:
>
> 1.    On your own behalf and on behalf of your heirs, executors, successors and assigns, you release and forever discharge Hamilton and all its affiliated entities and any and all of its officers, partners, directors, employees, shareholders, affiliated companies, attorneys, successors, and assigns, from

---

[20]Plaintiff's active participation in these meetings also belies his bald assertion that he was "under medication causing unclear thought" at the time he signed the severance agreement.

> any and all claims or actions, at law or in equity, judicial or administrative, debts, sums of money, accounts, judgments, or demands which have arisen or may arise related to your employment with or termination from Hamilton on or before the date of this agreement, including but not limited to any tort or contract claims, or claims under . . . Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, . . . Illinois Human Rights Act, retaliatory discharge and any other local, state or federal statute, ordinance, regulation or common law. You acknowledge and understand that you have been fully compensated for all the time in which you performed services with us in accordance with all state, federal and local wage and hour laws.
>
> 2. You voluntarily agree to withdraw your EEOC Charge No. 210 A 301645, corresponding IDHR Charge, or any other claim or charge against Hamilton or any of its related entities or partners. You further agree to send the Voluntary Withdrawal Request Form, attached as Exhibit A, to the EEOC in the attached envelope today, February 6.

These provisions explain in great detail that by signing the agreement and accepting the severance benefits Plaintiff was releasing, waiving, and/or foregoing any and all claims, including any Title VII claims, he had asserted or may possibly assert against Defendant. That Plaintiff understood these provisions is evidenced by, *inter alia*, (1) Plaintiff's subsequent withdrawal of his EEOC charge against Defendant and (2) the fact that Plaintiff informed his attorney on February 14, 2003 that he was "going to stop the situation . . . because [he] signed the severance agreement." Accordingly, this factor also favors Defendant.

### E. Amount of Time Plaintiff had for Deliberation Prior to Signing the Severance Agreement

Plaintiff was given twenty-one days to consider the terms of the severance agreement prior to signing it and another seven days after signing the agreement to revoke the same. Moreover, the agreement expressly provided that the seven-day revocation period could not be waived and that

16

Plaintiff could not receive his severance benefits until it had expired. Because the Court has not been provided with any evidence that suggests Plaintiff was not afforded sufficient time to make his decision, this factor favors Defendant.

**F.      Whether Plaintiff Actually Read the Severance Agreement and Considered its Terms Prior to Signing It**

Plaintiff baldly asserts that he did not read the severance agreement prior to signing it.[21] While this contention may help to bolster Plaintiff's suit, it does not preclude a finding that Plaintiff knowingly and voluntarily released and waived his Title VII claims. First, Plaintiff was offered a copy of the severance agreement, but chose not to take it. It would be unjust to penalize Defendant for Plaintiff's foolhardy decision. Second, Plaintiff was given up to twenty-eight days (twenty-one days prior to signing the agreement, and seven days after signing the agreement) to read and review the severance agreement. His failure to do so indicates that he never intended to read and review the agreement. Finally, Plaintiff consulted with an attorney on two occasions about the termination of his employment and the issue of severance pay. Therefore, it is reasonable to conclude that Plaintiff had access to assistance in reviewing the agreement should he have desired to do so. While in some cases a plaintiff's failure to read the agreement would favor a finding that the release and waiver included therein were not knowing and voluntary, it would be unjust in this case to penalize Defendant for Plaintiff's own decision and actions. Since no evidence was offered to establish that Plaintiff did not have time to read the agreement, was not afforded an opportunity

---

[21]The February 6 severance agreement specifically provides that "[b]y signing this letter Agreement, [Plaintiff] acknowledge[s] that [he has] read it and understand[s] it . . . ." Therefore, Plaintiff's signature at the bottom of the agreement arguably belies Plaintiff's unsubstantiated claim that he never read the agreement. Nevertheless, the Court will abide by its duty to construe all facts and draw all reasonable inferences in Plaintiff's favor.

to read the agreement, or received advice that he should not or need not read the agreement, this factor favors Defendant. *See Pierce I*, 65 F.3d at 572 (recognizing an "important federal policy: the encouragement of voluntary settlement of claims").

### G. Whether Consideration Given in Exchange for Waiver Exceeded Benefits to Which Plaintiff was Already Entitled by Contract or Law

In exchange for his release and waiver of his legal claims, Plaintiff was provided, *inter alia*, three months of severance pay ($12,500.04), one vacation day, and an agreement not to contest his unemployment claim filed on or after April 1, 2003. No evidence has been offered to suggest that these benefits were already owed to Plaintiff under an existing contract or the law. In fact, Defendant has provided evidence that all of the above-listed benefits were specifically provided to Plaintiff in exchange for the aforementioned release and waiver. Therefore, the Court must conclude that consideration above and beyond what Plaintiff was owed by contract or under the law is present here.[22]

### H. Whether Plaintiff's Release was Induced by Improper Conduct on Defendant's Part

Plaintiff argues in his brief that he signed the severance agreement "under duress" because he had "no choice but to sign a severance agreement or have [his] unemployment stopped and get unfavorable references to further employers." He also claims that he was "under medication causing unclear thought" at the time he signed the agreement. As an initial matter, Plaintiff offers absolutely no admissible evidence to substantiate these arguments. For this reason alone, they may

---

[22]It is worth mentioning that Plaintiff has never returned the severance pay he accepted in exchange for the release and waiver of his legal claims. *See Rinaldi v. World Book, Inc.*, No. 00 C 3573, 2001 WL 477145, at *6 (N.D. Ill. May 3, 2001) ("By retaining the benefits, plaintiffs ratified the release, and they cannot now void the contract.") (citations omitted).

be disregarded. Additionally, while "[d]uress is a defense to an otherwise valid contract[,]":

> [d]uress is not shown by the fact that one was subjected to mere annoyance, vexation, personal embarrassment, a difficult bargaining position or the pressure of financial circumstances. There must have been some imposition, oppression, undue influence, or the taking of undue advantage of the business or financial stress or extreme necessities or weakness[es] of another.

*Pierce I*, 65 F.3d at 569 (citations omitted). As stated in *Pierce I*, the "pressure of financial circumstances" imposed by a potential denial of unemployment benefits and the "personal embarrassment" that may result from unfavorable employment references would not constitute duress even if such pressure and embarrassment could be substantiated. Finally, "one cannot successfully claim duress as a defense to a contract when he had an alternative to signing the agreement." *Id.* Here, Plaintiff could have continued to pursue his EEOC charge and filed a claim for unemployment benefits despite the fact that Defendant may have contested the same. Because he had alternatives to signing the severance agreement, his duress defense fails.

Because the facts set forth by Defendant do not suggest that Plaintiff was subjected to any improper conduct on the part of Defendant, this factor favors Defendant.

\*   \*   \*

An analysis of the totality of the circumstances establishes that Plaintiff knowingly and voluntarily released and waived his Title VII claims against Defendant. Because each of the *Pierce I* factors, the admissible evidence, and all of the substantiated facts considered by the Court favor Defendant, the Court finds Plaintiff's release and waiver to be valid and enforceable. In light of that finding, there is no need to evaluate the merits of Plaintiff's Title VII claims and summary judgment may be granted. *See Cerutti*, 349 F.3d at 1060.

## II.     Breach of Plaintiff's Severance Agreement

Because summary judgment will be entered in favor of Defendant on all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction to decide Plaintiff's state law claim for breach of the February 6 severance agreement. *See* 28 U.S.C. § 1367(c); *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 764-65 (7th Cir. 1999).

**ORDERED:** Defendant's motion for summary judgment [38] is granted. Judgment will be entered in favor of Defendant on Plaintiff's Title VII race discrimination and retaliation claims included in his Complaint of Employment Discrimination [1]. Plaintiff's state law breach of severance agreement claim is dismissed without prejudice. 28 U.S.C. § 1367(c). Judgment will be set forth on a separate document and entered in the civil docket. Fed. R. Civ. P. 58, 79(a).

**DATED:** APR 0 5 2004

**ENTER:**

HON. GEORGE W. LINDBERG
United States District Judge